IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

VINSON WOODLEE

NO. 3:20-CR-0384-N

## FACTUAL RESUME

In support of Vinson Woodlee's plea of guilty to the offense in Count One of the indictment, Woodlee, the defendant, Scott Thomas, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the indictment charging a violation of 18 U.S.C. § 371 (42 U.S.C. § 1320a-7b(b)(1)), that is, Conspiracy to Solicit and Receive Kickbacks for Referrals to Federal Health Care Programs, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.*  That the defendant and at least one other person agreed to commit the crime of Soliciting and Receiving Kickbacks for Referrals to Federal Health Care Programs, as charged in the indictment;

*Second.*  That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third.*  That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2019).

Factual Resume—Page 1

purpose of the conspiracy.

The elements of Soliciting and Receiving Kickbacks for Referrals to Federal Health Care Programs, in violation of 42 U.S.C. § 1320a-7b(b)(1), are as follows:[2]

*First.*     That the defendant solicited and received remuneration, including any kickback, bribe, or rebate;

*Second.*     That the remuneration was solicited and received in return for referring an individual to Next Health, LLC for the furnishing or arranging for the furnishing of an item;

*Third.*     That the item was one for which payment was or might be made, in whole or in part, under a Federal health care program; and

*Fourth.*     That the defendant acted knowingly and willfully when soliciting and receiving the remuneration.

## STIPULATED FACTS

1. Vinson Woodlee admits and agrees that from at least in or about January 2012 through at least in or about July 2018, in the Northern District of Texas and elsewhere, Woodlee knowingly and willfully conspired, confederated, and agreed with Andrew Hillman, Semyon Narosov, and others known and unknown to the Grand Jury, to commit offenses against the United States, that is, violations of Title 42, United States Code, Sections 1320a-7b(b)(1), by knowingly and willfully asking for and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, for the furnishing of items and services, namely

---

[2] Fifth Circuit Pattern Jury Instruction 2.109A (5th Cir. 2019).

prescriptions, for which payment may be made in whole or in part under a Federal health care program, all in violation of 18 U.S.C. § 371 (42 U.S.C. § 1320a-7b(b)(1)).

2. Woodlee further admits that it was a purpose and object of the conspiracy for Woodlee and other co-conspirators to unlawfully enrich themselves through the payment, solicitation and receipt of bribes and kickbacks from Next Health in exchange for referring for items and services, namely prescriptions, for which payment was made in whole or in part under a Federal health care program, as defined by 42 U.S.C. § 1320a-7b(f), including TRICARE, CHAMPVA, Medicare, and FECA.

A. Federal Healthcare Programs

3. Woodlee agrees that the Medicare Program ("Medicare") is a federally funded health care program providing benefits to persons who were over the age of 65 or disabled.

4. Woodlee agrees that TRICARE was a health care program of the United States Department of Defense Military Health System that provided coverage for DoD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their dependents, and survivors.

5. Woodlee agrees that CHAMPVA is a health care benefit program that offers insurance coverage, including prescription drug coverage, to family members of veterans who do not qualify for TRICARE.

6. Woodlee agrees that The Federal Employee Compensation Act ("FECA") was a federally funded health care program as described in 20 C.F.R. § 10.0 that provided

Factual Resume—Page 3

monetary compensation, medical care, and vocational rehabilitation to civilian employees of the United States government, including Postal Service employees, for disability due to personal injury or disease sustained while in the performance of duty.

7. Woodlee agrees and admits that Medicare, TRICARE, CHAMPVA, and FECA were all "federal health care programs" as defined by 42 U.S.C. § 1320a-7b(f).

### B. Next Health

8. Woodlee agrees that Next Health was a holding company for a hierarchical structure of corporations and other entities that owned and controlled numerous other entities including pharmacies and laboratories that operated in the health care industry. This included Next Health's pharmacies, The Apothecary Shop among others, and their related "parent" company, Pharma Holdings US (PHUS) (hereinafter, collectively, "Next Health"). Next Health began operations in or about 2012.

9. Woodlee agrees that Next Health's pharmacy operations identified the most profitable prescription medications (i.e., lowest available wholesale cost with highest available reimbursement rates from private and government insurance providers) and then illegally paid physicians and others in exchange for those medications being prescribed through Next Health pharmacies. These very profitable prescriptions included compounding pain and scar creams, pain patches, and wellness supplements.

10. Woodlee agrees that Next Health tracked each prescription by the prescribing physician, and the individual who recruited the physician, whom Next Health referred to as a "marketer." In most instances, private or government insurance providers paid monies to Next Health for filled prescriptions directly or through pharmacy benefit

Factual Resume—Page 4

managers (PBMs). Woodlee agrees that Next Health would then calculate the net profits (sometimes referred to as profits or net proceeds) for these prescriptions and illegally kickback a percentage of the profits to the prescribing physicians.

11. Woodlee agrees that Next Health incentivized physicians to maximize prescription referrals and refills for Next Health prescriptions. Woodlee agrees that the scheme led to billing of prescriptions that were not legitimate.

### C. Woodlee's Involvement in the Scheme

12. Woodlee agrees and admits that he and his company, Med Left, LLC. ("Med Left") acted as a marketer for Next Health to recruit physicians to the illegal kickback scheme described above. Specifically, Woodlee agrees and admits that he would recruit physicians to write and fill prescriptions at Next Health and, working with Next Health, arrange for the physicians to receive a percentage of the profits that were generated from the physicians' prescription claims filed with federal health insurance and private insurance.

13. Woodlee agrees that Next Health employed several different methods to disguise its illegal kickbacks to physicians that changed throughout the course of the conspiracy.

#### i. Class A Pharmacies

14. Woodlee agrees that Next Health agreed to pay kickbacks, and physicians agreed to receive kickbacks through "syndicated" Class A pharmacies. A Class A pharmacy is authorized by the State of Texas to fill and dispense drugs.

15. Woodlee agrees that Next Health purchased Class A pharmacies and purported to sell ownership interests in those pharmacies to physicians for a nominal fee. Physicians would refer prescriptions to the Class A pharmacies for which they owned shares. The physicians would receive payments from the pharmacies disguised as purported returns on their investments in those pharmacies. Woodlee agrees that these payments were, in fact, kickbacks for the prescription referrals the physicians made to Next Health.

16. Woodlee agrees and admits that he recruited physicians to participate in the Class A pharmacy scheme in exchange for marketer fees. Woodlee admits that he did so knowing that the scheme was a way for Next Health to pay kickbacks to physicians for prescription referrals.

    ii.    **Class G Pharmacies**

17. Woodlee agrees and admits that Next Health also agreed to pay kickbacks, and physicians agreed to receive kickbacks through "syndicated" Class G pharmacies. A Class G pharmacy is licensed by the State of Texas to process prescriptions and cannot dispense drugs.

18. Woodlee agrees that Next Health purported to sell ownership interests in Next Health-owned Class G pharmacies to physicians for a nominal fee. Physicians would then refer prescriptions to the Class G pharmacies for which they owned shares. The Class G pharmacies would operate as call centers that purportedly processed the prescriptions by having separate Next Health-owned Class A pharmacies fill the prescriptions. As with the Class A pharmacy scheme, the physicians would receive

payments from the Class G pharmacies disguised as returns on their investments in those pharmacies.

19. Woodlee agrees that these payments were, in fact, kickbacks for the prescription referrals the physicians made to Next Health. Woodlee understood that this structure allowed Next Health and the physicians to hide the prescribing physicians' ownership interest in the pharmacies because the physicians did not have a direct ownership interest in the Class A pharmacies that filled the prescriptions.

20. Woodlee agrees and admits that he recruited physicians to participate in the Class G pharmacy scheme in exchange for marketer fees. Woodlee admits that he did so knowing that the scheme was a way for Next Health to pay kickbacks to physicians for prescription referrals.

### iii. Consulting Agreements

21. Woodlee agrees and admits that Woodlee and Next Health also agreed to pay kickbacks, and physicians agreed to receive kickbacks, through sham consulting arrangements. Under this scheme, Next Health would pay physicians either directly or funnel payments through Med Left disguised as consulting fees. Next Health paid these consulting fees even though physicians did not provide services pursuant to a consulting agreement. Woodlee agrees and admits that Next Health paid kickbacks through these consulting fees to physicians he recruited to the scheme in exchange for the referral of prescriptions to Next Health.

### iv. Managed Service Organizations ("MSOs")

22. Woodlee agrees and admits that Next Health also agreed to pay kickbacks, and physicians agreed to receive kickbacks, through Managed Service Organizations ("MSOs"). Under this scheme, Woodlee and other individuals working with Woodlee, created MSO entities that entered into services agreements with Med Left and its pharmacies to purportedly provide a list of services to the Med Left. Next Health would then pay Med Left for purported services provided to Next Health. Med Left would, in turn, pay the MSO entities for the purported services the MSO entities provided to Med Left.

23. Woodlee agrees and admits that he, along with others, sold ownership interests in the MSOs to physicians. The MSOs would then pay physicians as purported returns on their investments in those pharmacies.

24. Woodlee agrees and admits, however, that the MSO entities did not provide any services to Med Left. Woodlee agrees and admits that, instead, Woodlee and the physicians used the MSOs to hide payments by Next Health to physicians as kickbacks for the physicians' prescription referrals to Next Health.

25. Woodlee created several MSO entities for the purpose of paying kickbacks to physicians for their prescription referrals.

26. Specifically, Woodlee agrees and admits that the following MSO entities and their respective bank accounts: (1) received money from Next Health via Med Left; and (2) were used by Woodlee to pay kickbacks to physicians:

| Entity | Bank | Account Number |
|---|---|---|
| Agent Starling Enterprises, LLC | J.P. Morgan Chase | x2183 |
| Angelina Management Group | J.P. Morgan Chase | x3329 |
| August Legacy Business Solutions, LLC | J.P. Morgan Chase | x9558 |
| Austin Group Management, LLC | J.P. Morgan Chase | x0550 |
| Bastrop FHC Management, LLC | J.P. Morgan Chase | x6039 |
| Baytown Group Management LLC | J.P. Morgan Chase | x9381 |
| Blue Heron Business Solutions, LLC | J.P. Morgan Chase | x0809 |
| Dayne Healthcare Enterprises, LLC | J.P. Morgan Chase | x5813 |
| Genisys Healthcare Partners, LLC | J.P. Morgan Chase | x5957 |
| Hexamed Business Solutions, LLC | J.P. Morgan Chase | x5270 |
| Houston LIH Management, LLC | J.P. Morgan Chase | x0629 |
| Houston PAA Management, LLC | J.P. Morgan Chase | x5872 |
| Houston XXXI Management, LLC | J.P. Morgan Chase | x1189 |
| Idealign Business Solutions, LLC | J.P. Morgan Chase | x8725 |
| Jandon Enterprises, LLC | J.P. Morgan Chase | x1251 |
| Jandon Medical Staffing, LLC | J.P. Morgan Chase | x2931 |
| Merit Integrity Healthcare Partners, LLC | J.P. Morgan Chase | x5969 |
| North Harris Group Management, LLC | J.P. Morgan Chase | x8965 |
| Plano DIM Management, LLC | J.P. Morgan Chase | x2723 |
| Riva Reserve Healthcare | J.P. Morgan Chase | x3778 |
| South Harris Group Management, LLC | J.P. Morgan Chase | x5339 |
| Southern Cross Healthcare Partners, LLC | J.P. Morgan Chase | x5821 |
| Texas EHM Management, LLC | J.P. Morgan Chase | x0100 |
| Trinity Champion Healthcare Partners, LLC | J.P. Morgan Chase | x6933 |

27. Woodlee agrees and admits that all the money Next Health paid to the MSOs via Med Left was for the purpose of either paying kickbacks to physicians or marketer fees to Woodlee.

v. **Direct Payments from Med Left**

28. Woodlee agrees and admits that he also paid physicians kickbacks directly through Med Left. Specifically, Woodlee agrees and admits that Next Health paid Med Left a portion of their net proceeds, a portion of which Med Left used to directly pay physicians who referred prescriptions to Next Health but did not participate in the above schemes.

D. **Payments to Woodlee**

29. Woodlee agrees and admits that Next Health paid Woodlee and Med Left marketer fees in exchange for Woodlee recruiting physicians to the illegal kickback scheme described above.

30. Woodlee was paid approximately 50% of net profits on prescriptions written by physicians he referred to Next Health.

31. Woodlee agrees and admits that Next Health paid Woodlee marketer fees by making payments to Med Left, via the following bank accounts:

| Entity | Bank | Account Number |
|---|---|---|
| Med Left | J.P. Morgan Chase | x0650 |
| Med Left | J.P. Morgan Chase | x3939 |

32. Woodlee further agrees and admits that Med Left transferred funds from those bank accounts to the following accounts controlled by Woodlee and/or his family members:

| Entity | Bank | Account Number |
|---|---|---|
| H. Woodlee/S. Woodlee | J.P. Morgan Chase | x1390 |
| J. Woodlee | J.P. Morgan Chase | x7565 |
| S.L. Woodlee/Vinson Woodlee | J.P. Morgan Chase | x9265 |
| Trinity Living Trust | J.P. Morgan Chase | x4284 |

33. Further, Woodlee agrees and admits that the above accounts were used to fund the purchase of the following assets:

| Property | Identification |
|---|---|
| Northwestern Mutual Policy fbo S. Woodlee | Account No. x6827 |
| Northwestern Mutual Policy fbo Vinson Woodlee | Account No. x6851 |
| 2019 Mercedes Benz GLS | VIN x6559 |

34. Woodlee agrees that Next Health also disguised the payments made to Woodlee by providing Woodlee ownership interests in the Class A pharmacies, Class G pharmacies, and MSOs – as described above – and disguising the payments to Woodlee as returns on those investments.

35. During the course of the conspiracy, Woodlee admits that Next Health paid Woodlee, Med Left, and family members of Woodlee over $60 million in illegal kickbacks. From the over $60 million that Woodlee and Med Left received from

Next Health. Woodlee paid approximately $16.8 million to physicians or physician groups for whom he served as a marketer. Woodlee paid an additional $30.6 million to sub-marketers.

E. **Violation of Federal Anti-Kickback Statute**

36. Woodlee agrees and admits that he recruited physicians who referred prescriptions to Next Health pharmacies for beneficiaries of federal health care programs, namely Medicare, TRICARE, CHAMPVA, and FECA.

37. Woodlee agrees and admits that as a result of these prescriptions billed to federal health care programs, the federal health care programs paid Next Health for prescription claims.

38. Woodlee agrees for at least some of these claims, the prescriptions were not legitimate. Woodlee agrees that the amount of prescription claims paid to Next Health for prescriptions that were not legitimate, is estimated to be $2,000,000.

39. Woodlee agrees that $2,000,000.00 in losses should be apportioned as follows:

| Victim | Amount |
|---|---|
| Medicare | $817,349.60 |
| TRICARE | $732,612.37 |
| CHAMPVA | $22,672.73 |
| FECA | $427,365.30 |
| Total | $2,000,000.00 |

40. Woodlee agrees and admits that he knew that it violated the Federal Anti-Kickback statute ("AKS") for Next Health to pay Woodlee for the prescriptions of

Factual Resume—Page 12

federal insurance beneficiaries and that such payments would subject the coconspirators to heightened scrutiny by insurers and auditors. As a result, Next Health and Woodlee engaged in three different schemes to disguise, conceal, and cover up illegal payments for the referral of prescriptions paid by federal insurers.

41. Woodlee agrees that Next Health paid Woodlee for his federal health care business referrals by paying him wages as a W-2 employee. Woodlee agrees that the wages were used to disguise illegal kickbacks by making them appear to be part of a "salary" and "commission" to an employee when, in fact, Woodlee did not have a bona-fide employment relationship with Next Health.

42. Woodlee agrees and admits that Next Health also paid Woodlee for his federal health care business referrals by paying his family members. Woodlee agrees and admits that his family members were paid as W-2 employees even though they did not actually work for Next Health as bona fide employees. The W-2 "salary" received by Woodlee's family members was a way to disguise illegal kickbacks from Next Health to Med Left for federal prescription referrals.

43. Woodlee agrees that Next Health also paid Woodlee for his federal health care business referrals by increasing the marketer fees he received from private insurance business referrals.

44. Woodlee further agrees and admits that Next Health paid Woodlee proceeds of the AKS violation – i.e., compensation for the federal health care business referrals – through: (1) Med Left, via the bank accounts listed in Paragraph 31; and (2) the MSO bank accounts listed in Paragraph 26. Woodlee further agrees that proceeds of

the AKS violation were transferred to the accounts listed in Paragraph 32 and were used to purchase the assets listed in Paragraph 33.

45. Woodlee agrees and admits that, in furtherance of the conspiracy and to accomplish its object and purpose, on or about March 1, 2014, Next Health calculated Woodlee's share of the profits earned from prescriptions paid for by federal programs the prior month at approximately $12,639.29.

46. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the indictment.

[NOTHING FURTHER ON THIS PAGE]

AGREED TO AND STIPULATED on this 27th day of October, 2022.

 

_____
VINSON WOODLEE
Defendant

_____
SCOTT THOMAS
Attorney for Defendant

CHAD E. MEACHAM
UNITED STATES ATTORNEY

_____
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
RENEE HUNTER
Assistant United States Attorney
Texas Bar No. 24072942
DONNA STRITTMATTER MAX
Assistant United States Attorney
Texas Bar No. 24041984
1100 Commerce Street, Third Floor
Dallas, TX 75242
Tel: 214-659-8600
Email: Marty.Basu@usdoj.gov
Email: Renee.Hunter@usdoj.gov
Email: Donna.Max@usdoj.gov